

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-8-2002

# USA v. Alba

Precedential or Non-Precedential:

Docket No. 01-2510

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Alba" (2002). *2002 Decisions.* Paper 252.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/252

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos.01-2510 and 01-2907
_____

UNITED STATES OF AMERICA

Appellee/Cross-Appellant

v.

HERMINIO ENRIQUE ALBA,

Appellant/Cross-Appellee

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Crim. No. 00-cr-608
District Judge:  The Honorable Mary Little Cooper
_____

Submitted Under Third Circuit LAR 34.1(a)
April 5, 2002
_____

Before: SLOVITER, BARRY, and ALARCON, Circuit Judges

(Opinion Filed: April 8, 2002)
_____

OPINION OF THE COURT
_____


BARRY, Circuit Judge

On January 4, 2001, following a bench trial, Herminio Enrique Alba was convicted of illegally entering the country in violation of 8 U.S.C.  1326(a) & (b)(2). Alba contends that the District Court erred in precluding him from presenting the affirmative defense of entrapment by estoppel.  The government cross-appeals, contending that the District Court erred in granting a five-level downward departure under U.S.S.G.  5K2.0.  We have jurisdiction under 28 U.S.C.  1291 and 18 U.S.C. 3742(b), and will affirm.

The parties are familiar with the facts of the underlying dispute and we will, accordingly, discuss them only as necessary to resolve the issues presented.

Alba is a convicted heroin and cocaine dealer, and was deported to the Dominican Republic on January 16, 1990.  At the time of his deportation, the INS provided Alba with Form I-294, which provided (in both English and Spanish), in pertinent part, that:

> Should you wish to return to the United States, you must first
> write this office . . . as to how to obtain permission to return
> after deportation.  By law (Title 8 of United States Code,
> Section 1326) any deported person who within five years
> returns without permission is guilty of a felony. . . .
>
> Please keep this letter and refer to the above file number
> when writing to this office.

App. 22 (emphasis added).  It is undisputed that the five-year period referenced in Form

I-294 is not contained in 8 U.S.C. 1326(a). Instead, the statute makes reentry illegal at any time without the express permission of the government.

On August 17, 2000, Alba entered the United States at Newark International Airport and was arrested when a customs check revealed his prior deportation. Following his conviction, Alba was sentenced to 30 months in prison to be followed by three years of supervised release and a $500 fine.

Prior to trial, the District Court denied, and we review de novo, Alba's motion to dismiss the indictment or, in the alternative, to permit the defense of entrapment by estoppel to be presented at trial. The defense of entrapment by estoppel is rooted in the Due Process Clause, and applies where the defendant establishes, by a preponderance of the evidence, that: (1) a government official (2) told the defendant that certain criminal conduct was legal, (3) the defendant actually relied on the government official's statements, (4) and the defendant's reliance was in good faith and reasonable in light of the identity of the government official, the point of law represented, and the substance of the official's statement. United States v. Stewart, 185 F.3d 112, 124 (3d Cir.), cert. denied, 528 U.S. 1063 (1999); United States v. West Indies Transp., Inc., 127 F.3d 299, 313 (3d Cir. 1997). For a defendant's reliance to be "reasonable," it must be shown that the government official's statement would not have placed the defendant on notice to make further inquiries. West Indies, 127 F.3d at 313 n.13.

Alba contends that the text "any deported person who within five years returns without permission is guilty of a felony" permitted him to reasonably infer that he could enter the United States without permission five years after his deportation. The District Court held that Alba failed to establish the second prong of the entrapment by estoppel defense because Form I-294 did not expressly so state. In addition, the District Court held that Alba failed to demonstrate reasonable reliance because Form I-294 put him on notice to make further inquiries if he was sincere about trying to comply with the law.

Alba claims that the District Court construed the entrapment by estoppel defense too narrowly. Specifically, Alba contends that it is "clear from Supreme Court precedent that advice or 'affirmative misleadings' that are alleged to justify the defense of entrapment by estoppel may be implied," and that it "is also clear that the defense may be raised even though the advice or assurances relied upon are contradicted by other, more authoritative statements." Appellant's Br. at 13-14 (citing United States v. Pennsylvania Indus. Chemical Corp., 411 U.S. 655 (1973) and Cox v Louisiana, 379 U.S. 559 (1965)).

Alba's reliance on these Supreme Court cases is misplaced because, regardless of what Form I-294 may or may not imply regarding penalties for reentry after five years, he overlooks the express requirement in Form I-294 that permission be granted by the government prior to reentry. Form I-294 states that a deportee "must" write to obtain permission to reenter the United States. It is undisputed that Alba made no such effort, and nothing in Form I-294 revokes or vitiates, expressly or impliedly, this writing requirement or the need to obtain permission.

The text upon which Alba relies, construed in a light most favorable to him, arguably suggests that it may not be a felony to reenter the country without permission after five years. That text, however, does not suggest that he need not first have permission to reenter, or that reentry without permission was legal. As such, Alba has failed to demonstrate that a government official told him that he could reenter the United States without first writing to obtain permission. United States v. Aquino-Chacon, 109 F.3d 936, 939 (4th Cir. 1997) ("The language contained in Form I-294 that reentry without permission within five years of deportation is a felony neither states nor implies that reentry without permission after five years is permissible."); see also United States v. Ramirez-Valencia, 202 F.3d 1106, 1109-10 (9th Cir. 2000) (following Aquino-Chacon); United States v. Ortiz-Perez, 858 F. Supp. 11, 12-13 (D.R.I. 1994) (rejecting the same challenge based on Form I-294), aff'd, 66 F.3d 307 (1st Cir. 1995). In addition, Alba cannot demonstrate reasonable reliance because, given Form I-294's permission requirement and its silence on penalties for reentry after five years, a person who truly sought to comply with the law would have made further inquiries. Ramirez-Valencia, 202 F.3d at 1110 ("[B]ecause Form I-294 unequivocally required defendant to obtain permission to return to the United States, which he did not do, his alleged reliance was . . . unreasonable."). Accordingly, we will affirm the District Court's order denying Alba's motion to dismiss the indictment.

We turn, then, to the government's cross-appeal. Under the Sentencing

Guidelines, a violation of 8 U.S.C. 1326(a) & (b) results in a base offense level of 8. U.S.S.G. 2L1.2(a) (2000). Because Alba was deported after convictions for aggravated felonies, 16 levels were added, bringing his adjusted offense level to 24. U.S.S.G. 2L1.2(b)(1)(A). The District Court then adjusted Alba's sentence downward by 2 levels for acceptance of responsibility, bringing his total offense level to 22. Alba's prior convictions placed him in a criminal history category III, yielding a guideline imprisonment range of 51 to 63 months.

The District Court, however, granted a five-level downward departure because the circumstances surrounding Alba's crime removed his case from the "heartland" of similar cases. See U.S.S.G. 5K2.0; 18 U.S.C. 3553(b). This five-level reduction to what equated to an offense level of 17 yielded an imprisonment range of 30 to 37 months. As noted, the District Court then imposed a 30 month sentence.

The District Court reasoned that the 51 to 63 month range overstated Alba's culpability and the harm caused "because of the truly unusual circumstances of this case." The District Court observed that it was not aware of a "single case where the defendant takes an airplane into the United States, walks through Customs, hands them his green card and says here I am. In every single one of these cases, the person is found in the United States. He has slipped back into the country." SA 33. In other words, the District Court found that the manner in which Alba reentered the country forthrightly versus surreptitiously removed this case from the typical illegal reentry case, and consequently that the guidelines overstated Alba's culpability. SA 33 ("Alba technically committed this offense, but the culpability here I find is low and I find the harm to be low as well."); SA 37 ("Basically [Alba] bumbled his way into this country, presented his green card at Customs and said here I am, I think I'm allowed to come in here. . . . I think that the price under the structure of the [S]entencing Guidelines is too high in these particular circumstances.").

In reaching this conclusion, the District Court also relied on other factors that it believed, when viewed together, removed this case from the heartland. Specifically, the District Court observed that Alba only has a sixth grade education, was given Form I-294, was left with his green card, and had been working gainfully in the Dominican Republic without further legal troubles. In addition, the District Court noted that the purported purpose of Alba's trip to the United States was to visit with his 16-year old son and that Alba had made "full disclosure at every step in this case of what he was doing." SA 33.

We review the District Court's decision to grant a downward departure and its determination that this case falls outside of the "heartland" of cases for an abuse of discretion. Koon v. United States, 518 U.S. 81, 97-100 (1996); United States v. Yeaman, 248 F.3d 223, 227 (3d Cir. 2001), cert. denied, 122 S. Ct. 816 (2002); United States v. Iannone, 184 F.3d 214, 225 & 227 (3d Cir. 1999). Of course, "while we owe deference to [a] District Court's interpretation of the facts warranting departure . . . , we may correct [a] District Court's legal error if we find that it . . . departed based on a factor which would not warrant departure under any circumstances." Yeaman, 248 F.3d at 227.

In the atypical case in which a defendant's conduct can be said to fall outside of the "heartland," a sentencing court may consider a departure from the guidelines. E.g., Iannone, 184 F.3d at 226. Such departures are permissible "if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. 5K2.0, p.s. (quoting 18 U.S.C. 3553(b)). The guidelines also permit a departure where a combination of factors remove a case from the "heartland," even if none of the factors would individually distinguish the case from the norm. U.S.S.G. 5K2.0, cmt.; see also Koon, 518 U.S. at 113-14. Aside from a few prohibited factors that are not relevant here, the guidelines do not foreclose what factors a district court may consider. Iannone, 184 F.3d at 226.

In Koon, the Supreme Court set forth steps a district court must traverse when determining whether to grant a 5K2.0 departure. Koon, 518 U.S. at 94-96. First, the district court should identify the factor(s) that potentially remove the case from the "heartland." Second, the court should determine whether the guidelines forbid departures based on the factor(s), encourage departures based on the factor(s), or are silent on the factor(s). Iannone, 184 F.3d at 226 (discussing Koon). Third, the court

should "apply the appropriate rule: (1) if the factor is forbidden, the court cannot use it as a basis for departure; (2) if the factor is encouraged, the court is authorized to depart if the applicable guideline does not already take it into account; (3) if the factor is discouraged, or encouraged but already taken into account by the applicable guideline, the court should depart only if the factor is present to an exceptional degree, or in some other way makes the case different from the ordinary case in which the factor is present; or (4) if the factor is unmentioned, 'the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether [the factor] is sufficient to take the case out of the Guideline's heartland.'" Id. (quoting Koon, 518 U.S. at 95-96) (alteration in original).

Here, the District Court identified several factors, none of which is expressly forbidden by the guidelines. The government, however, contends, for starters, that the Court erred in granting a downward departure because the manner in which Alba committed the offense presenting a green card to the customs agent at the airport was typical in comparison to the heartland of illegal reentry cases. To this end, the government notes that 8 U.S.C. 1326 does not impose levels of culpability depending on the manner of an alien's reentry and that aliens who entered as Alba did are not strangers to the courts. Accordingly, the government opines, Congress "presumably" contemplated such circumstances when formulating the guidelines for 1326 violations.

The government also contends that, given the operation of the guidelines as a whole, Alba's culpability and the harm caused were not overstated. In addition, the government claims that the remaining factors considered by the District Court were each insufficient to permit a downward departure because they are "discouraged" as factors warranting a downward departure and were not present to a degree sufficiently extraordinary to permit a departure. Finally, the government contends that the extent of the District Court's departure was unreasonable, as it was not analytically justified and essentially "eliminated" the 16-level upward adjustment for Alba's aggravated felony convictions.

Although the government's contentions have given us much food for thought, we ultimately find them unpersuasive. More specifically, and mindful of the Supreme Court's observation that district courts are better situated to discern whether or not a case is within the "heartland," we cannot conclude that the District Court abused its discretion in finding that this case was not. The fact that aliens can be and have been on occasion found guilty under 1326 in circumstances such as here does not render this case typical. As the District Court found, this is not a case involving a clandestine border crossing or even forged identification papers and efforts to conceal the alien's identity. Instead, Alba walked right up to the customs agent and surrendered his green card at the airport. While perhaps not unprecedented, such circumstances can reasonably be construed as outside of the heartland.

Nor does the government's individual assault on the other factors cited by the District Court in support of its departure alter our conclusion. When viewed collectively and in tandem with the manner of Alba's reentry, these factors support the District Court's conclusion that this case presented mitigating circumstances to a degree sufficiently exceptional to warrant a departure. Accordingly, we cannot find error in the District Court's conclusion that this case, particularly in light of the manner of Alba's reentry, is atypical.

Finally, we do not find the extent of the District Court's departure unreasonable. In reviewing the extent of the departure, we are mindful of the fact that "the district courts are entitled to 'a substantial amount of discretion'" in this area. United States v. Kikumura, 918 F.2d 1084, 1110 (3d Cir. 1990). Indeed, "[a]t this stage, the question is no longer whether the district court has substituted its judgment for that of the Sentencing Commission, but rather whether the court of appeals should substitute its judgment for that of the district court." Id.; see also United States v. Queensborough, 227 F.3d 149, 160 (3d Cir. 2000), cert. denied, 531 U.S. 1131 (2001).

To be sure, the District Court could have been more precise in explaining the basis for its selection of what amounted to a five-level departure. Nevertheless, after carefully reviewing the record and the District Court's linking of the departure to the low culpability and harm associated with Alba's offense, we do not find the extent of the departure or the two-and-a-half year sentence unreasonable or analytically unsound. Indeed, that sentence is "minimally sufficient to satisfy concerns of retribution, general

deterrence, specific deterrence, and rehabilitation."  Kikumura, 918 F.2d at 1111; see also United States v. Serafini, 233 F.3d 758, 776-77 (3d Cir. 2000).

For all of the foregoing reasons, we will affirm the District Court's order denying Alba's motion to dismiss the indictment and will affirm the judgment of sentence.

TO THE CLERK OF THE COURT:

Please file the foregoing Opinion.

/s/ Maryanne Trump Barry
Circuit Judge