# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-3196

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * Appeals From the United States |
| | * District Court for the |
| Robert Lee Norman, also known as | * Southern District of Iowa. |
| Skunk, | * |
| | * |
| Appellant. | * |

_____

No. 02-3223/3362

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee/Cross Appellant, | * |
| | * |
| v. | * |
| | * |
| Russell J. Schoenauer, | * |
| | * |
| Appellant/Cross-Appellee. | * |

_____

Submitted: October 23, 2003
Filed: January 22, 2005
Vacated: May 27, 2005
Reinstated: October 31, 2005

_____

Before RILEY, HEANEY, and SMITH, Circuit Judges.

_____

HEANEY, Circuit Judge.

These cases have returned to our panel following the Supreme Court's grant of certiorari, vacation of the judgment, and remand for reconsideration in light of United States v. Booker, 125 S. Ct. 738 (2005).[1] We requested supplemental briefing from the parties regarding the applicability of Booker and United States v. Pirani, 406 F.3d 543 (8th Cir. 2005) (en banc), to their respective cases. With respect to all matters other than our reconsideration of the defendants' sentences in light of Booker, we adhere to our prior opinion. See United States v. Cuervo, 354 F.3d 969 (8th Cir. 2004). As to the Booker issues, we affirm for the reasons stated below.

Robert Lee Norman and Russell J. Schoenauer were sentenced pursuant to the district court's[2] application of the United States Sentencing Guidelines. Norman received a 352-month sentence, consisting of a 292-month guidelines sentence for his drug trafficking convictions and a consecutive 60-month sentence for using a firearm

_____

[1]This procedure is commonly known as the Supreme Court's "GVR" mechanism. In Lawrence v. Chater, 516 U.S. 163 (1996) (per curiam), the Supreme Court explained the process and its basis. Essentially, a GVR disposition is appropriate where intervening developments, such as a new decision of the Court or a new agency interpretation of a rule, call into question the lower court's ruling. Id. at 167-68. The GVR is not the equivalent of a reversal on the merits, however. Rather, the Court remands for the sake of judicial economy–so that the lower court can more fully consider the issue with the wisdom of the intervening development. Id.; see also id. at 174 ("Indeed, it is precisely because we are uncertain, without undertaking plenary analysis, of the legal impact of a new development, especially one, such as the present, which the lower court has had no opportunity to consider, that we GVR.").

[2]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

in furtherance of drug trafficking. Schoenauer received a 210-month guidelines sentence.

At the time of sentencing, the court understood the guidelines to be mandatory. Although both Norman and Schoenauer were subject to a number of required sentence enhancements under the guidelines regime, neither of them challenged either the enhancements or the guidelines system in a manner that would preserve the Booker issue for our review.[3] Pirani, 406 F.3d at 549-50 (holding that a claim of Booker error is preserved if the defendant below argued that his sentence violated Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004), or that the guidelines were unconstitutional). Thus, we review for plain error. United States v. Ryder, 414 F.3d 908, 917 (8th Cir. 2005). Plain error relief is warranted if the defendant can show that the district court committed an error that is plain, which affected his substantial rights, and which, if left uncorrected, would seriously affect the fairness, integrity, or public reputation of judicial proceedings. Johnson v. United States, 520 U.S. 461, 466-67 (1997); Pirani, 406 F.3d at 550.

The first two factors are satisfied in these cases because the district court sentenced the defendants under the mandatory guidelines regime, "and we have previously determined that error to be plain." United States v. Backer, 419 F.3d 882, 884 (8th Cir. 2005). In this circuit, our next task is to determine whether there is a reasonable probability, based on the appellate record as a whole, that the defendants would have received a more favorable sentence absent the Booker error. Pirani, 406

---

[3]The author of this opinion dissented in Pirani on the issue of what type of objection is sufficient to preserve a Booker issue for review, and stands by that dissent. See Pirani, 406 F.3d at 555-62 (Heaney, J., dissenting). Under that view, each of these defendants would have preserved their Booker claims through their objections to the district court's drug quantity determinations. A majority of our court en banc has held to the contrary, however, and this panel is not at liberty to overrule that decision.

F.3d at 551-52. If so, we consider whether we must correct the error to preserve the fairness, integrity, or public reputation of judicial proceedings. Id. at 550.

Having carefully reviewed the entire record in Schoenauer's case, we conclude that he cannot establish a reasonable probability that he would have received a more favorable sentence absent the Booker error. Although Schoenauer received a two-level sentence departure, this was not indicative of the district court's desire to further deviate from the guidelines. The departure was specifically designed to counter a two-level enhancement Schoenauer had received for possessing a dangerous weapon during the commission of his drug crimes. Cuervo, 354 F.3d at 999. The district court believed that enhancement was required, but further believed that the circumstances of the enhancement took Schoenauer's case out of the "heartland," justifying a departure. Id. Thus, the departure in this case does not establish a reasonable probability of a more favorable sentence under the advisory guidelines. We note that Schoenauer received a sentence in the middle of his adjusted guidelines range, cf. United States v. Perez-Ramirez, 415 F.3d 876, 878 (8th Cir. 2005) (finding persuasive the fact that a district court sentenced a defendant in the middle of his guidelines range, leaving "unused some of its discretion to sentence Perez-Ramirez to a more favorable sentence under the mandatory, pre-Booker guidelines"), and we have found no other indication in the record supportive of Schoenauer's contention that he would have received a more lenient sentence under the advisory guidelines. Accordingly, we affirm the district court's sentence with respect to Schoenauer.

We now turn to Norman's case. At the time of his sentencing, Norman presented evidence that he suffered from Type 2 diabetes, retinopathy, hypertension, and arthritis. His conditions require the administration of a regimen of medication, including several shots of insulin, daily. Norman moved for a downward departure based on his physical condition. The district court made the following statement regarding the downward departure:

Mr. Lowe [Norman's attorney], I think your client has a serious condition. Whether or not it is an extreme physical impairment isn't supported, in my view, by the medical records that I've read. Here's what I would urge you to do–there must be a way to do this. I'm not an appellate lawyer anymore–but you should get some updated medical. Based on what I got from Springfield . . . . I don't think it qualifies under [United States Sentencing Guidelines section] 5H1.4. Do you have any cases or argument? Because all the cases I've found, as well as the guideline, tell me the quality of this medical evidence–that the evidence simply is not there.

. . . .

And, you know, as a layperson, I think that diabetes 1 or 2 with retinopathy is a condition that would fit into [United States Sentencing Guidelines section] 5H1.4. But I'm not a doctor. If you get a doctor to tell me, I think I'd have a basis to depart. But based on this record, and specifically I'm referring to the medical evidence that I have from Springfield as of 5-31-02, I think it would be reversible error to find a departure based on 5H1.4.

(Sent. Tr. at 45-46.)

Norman would have us interpret this statement as suggestive that the district court would have granted a lower sentence had it been aware the guidelines were not mandatory. We read it differently. The report referenced by the district court in the above passage is from the Medical Center for Federal Prisoners in Springfield, Illinois, a report we have independently reviewed. As the district court noted, the report stated that Norman's "physical activities are not restricted," and that Norman's treatment regimen could be followed "at any institution." (Id. at 32.) Thus, this is not a situation where the district court would have liked to have given a lower sentence but found no avenue available, Ryder, 414 F.3d at 919-20 (granting plain error Booker

-5-

relief where the record clearly indicated the district court disapproved of the guidelines sentence it imposed, although it found the defendants did not qualify for sentence departures), or where the record reflects serious concerns about the defendant's ability to receive needed medical care while incarcerated, United States v. Spigner, 416 F.3d 708, 712-13 (8th Cir. 2005). Rather, the district court in this case sought some evidence from Norman disputing the Springfield report's conclusion that his health would not be adversely affected by his incarceration–evidence which Norman failed to present. Although the district court couched its sentence in terms of Norman's failure to qualify for a physical-condition departure under the mandatory guidelines,[4] we see no basis in the record suggesting the reasonable possibility of a different result under the now-advisory guidelines.

Because neither defendant has established a reasonable probability of a more lenient sentence if they were sentenced under the advisory guidelines regime, we need not consider whether they established the fourth prong necessary to warrant plain error relief. We affirm the sentences imposed by the district court.

_____

---

[4]The district court was well aware that Norman's convictions for maintaining a continuing criminal enterprise, 21 U.S.C. § 848, and using a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c), mandated a minimum sentence of at least 300 months.