**Russell J. SCHOENAUER,**
**Movant/Petitioner,**

v.

**UNITED STATES of America,**
**Respondent.**

No. 4:07–cv–00169–RP.

United States District Court,
S.D. Iowa,
Central Division.

Sept. 27, 2010.

Order on Motion to Alter or Amend
Judgment Nov. 2, 2010.

---

Frank L. Burnette, Attorney at Law, Des Moines, IA, J. Justin Johnston, Wyrsch Hobbs & Mirakian, Kansas City, MO, for Movant/Petitioner.

Gary L. Hayward, Clifford D. Wendel, U.S. Attorney's Office, Des Moines, IA, for Respondent.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is Russell Schoenauer's motion to vacate, set aside, or correct his sentence, filed pursuant to 28 U.S.C. § 2255. Schoenauer is represented by counsel. The Court held a hearing on the motion on July 14, 2010. The parties submitted post hearing briefs on August 12, 2010, and August 19, 2010. The matter is now fully submitted.

For the following reasons, the Court grants Schoenauer's 28 U.S.C. § 2255 motion.

## I. Background

A jury convicted Schoenauer of conspiracy to distribute fifty to five hundred grams of methamphetamine and one hundred to one thousand grams of marijuana and of two counts of distributing methamphetamine. After a separate trial, he was also convicted of three counts of unlawful possession of a firearm. On August 26, 2002, he was sentenced to 210 months imprisonment on the drug charges and 120 months on the firearms convictions, the sentences to be served concurrently. The Eighth Circuit Court of Appeals affirmed his judgment and conviction on initial appeal. *United States v. Cuervo*, 354 F.3d 969 (8th Cir.2004) (rehearing and rehearing en banc denied). The Supreme Court accepted certiorari in the drug case, and remanded the case to the Eighth Circuit Court of Appeals for reconsideration in light of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), where the sentences were again affirmed. *United States v. Norman*, 427 F.3d 537 (8th Cir.2005) (rehearing and rehearing en banc denied).

Now pending is Schoenauer's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. He claims he is entitled to relief because (1) trial counsel James Martin Davis was ineffective in failing to move to exclude the testimony of government expert Brad Richards under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire v. Carmichael* 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); (2) trial counsel was ineffective in failing to investigate and present evidence to support Schoenauer's claim that he possessed

firearms in reliance on advice stemming from contacts with governmental agencies; (3) trial counsel was ineffective in failing to object to evidence relating to his alleged affiliation with the Sons of Silence motorcycle club; (4) trial counsel was ineffective for failing to move to sever Schoenauer's trial, so that Norman could testify on his behalf; (5) appellate counsel was ineffective in failing to argue, on remand, that *Booker* error had been adequately preserved; and (6) trial counsel was ineffective in failing to investigate and seek discovery regarding the Internal Revenue Service's participation in the investigation of Schoenauer's allegedly "unexplained income," and the IRS's conclusions regarding such investigation.[1]

## II. Analysis

Schoenauer cites a number of ways in which he claims counsel was ineffective. To prevail on a claim that trial counsel provided constitutionally ineffective assistance, a petitioner must show (1) counsel's representation was deficient, and (2) the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish the first prong, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687–88, 104 S.Ct. 2052. Prejudice is demonstrated with "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. A court need not address both components of the test if a petitioner makes an insufficient showing on one of the prongs. *Id.* at 697, 104 S.Ct. 2052

A number of witnesses testified at the 2255 hearing. In determining the credibility of the witnesses and the weight to be accorded their testimony, the Court has taken into consideration:

> The character of the witness[es], [their] demeanor on the stand, [their] interest, if any, in the result of the trial, [their] relation to or feeling toward the parties to the [trial], the probability or improbability of [their] statements as well as all the other facts and circumstances given in evidence.

*Clark v. United States*, 391 F.2d 57, 60 (8th Cir.1968).

The Court finds of particular importance the testimony of Russell Schoenauer regarding discovery requests he made to trial counsel James Martin Davis. Schoenauer testified that he requested that Davis obtain certain records, and that he told Davis he was certain the records would contradict any testimony by the government that he had unexplained income. Considering all factors cited above, the Court found Schoenauer's testimony regarding these requests to be credible.

The claims of ineffective assistance of counsel are individually addressed below.

a. **Failure to move to exclude the testimony of government expert Brad Richards under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, and *Kumho Tire v. Carmichael.***

Schoenauer claims counsel was ineffective in failing to move to have the testimony of government witness Brad Richards excluded pursuant to the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct.

---

1. At the 2255 hearing, counsel stipulated that he was withdrawing any claim that Schoenauer's initial trial counsel was ineffective for representing Schoenauer despite a conflict of interest due to representation by his firm of a co-defendant.

2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). He claims that the testimony was unreliable, counsel should have objected on that basis, and that the testimony should have been excluded.

The contested testimony was given by Brad Richards. Richards, an auditor with the Bureau of Alcohol, Tobacco and Firearms, gave expert testimony at trial to establish that Schoenauer's wealth exceeded his income. Richards testified that for the time period 1992–1998 Schoenauer's investments totaled $2.9 million while his available income was only $262,200. He testified that his conclusion was, therefore, that Schoenauer had $2.6 million unexplained income for that time period. It was the government's position at trial that this unexplained income was proceeds from the drug conspiracy.

The government claims that the issue of the admissibility of Richards' testimony was raised on direct appeal and therefore may not be raised in this proceeding. *See, Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir.2003) ("It is well settled that claims which are raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255."). Schoenauer claims that the issue raised on direct appeal was a much more limited issue. He claims counsel raised only a claim that the evidence failed to meet the standard of admissibility set in the tax case *Holland v. United States*, 348 U.S. 121, 132–38, 75 S.Ct. 127, 99 L.Ed. 150 (1954), and that the Eighth Circuit Court of Appeals therefore did not address the more narrow questions of whether

Richards' underlying methods were proper or whether his conclusions were supported by sufficient facts, instead making only a finding that "Holland should not strictly apply in non-tax cases." The Court agrees that the current claim differs somewhat from the issue raised on direct appeal. Schoenauer is now arguing that trial counsel was ineffective for failing to attack the fundamental reliability of the testimony; not just whether the Court erred in failing to require strict compliance with *Holland*.[2]

On direct appeal, the Eighth Circuit Court of Appeals held that the standards set forth in *Holland v. United States*, 348 U.S. 121, 132–38, 75 S.Ct. 127, 99 L.Ed. 150 (1954) should not strictly apply in non-tax cases, and found that because financial gain was not an element of any of the offenses of conviction, it was not reversible error to allow Richards to testify. *United States v. Cuervo*, 354 F.3d 969, 993 (8th Cir.2004). The Court found no reversible error in allowing Richards to testify as to Schoenauer's wealth, and that his testimony as to wealth was relevant. "There is no question that Richards testified as to a relevant matter; he spoke directly to the issue of money that the government alleged was derived from the drug conspiracy." *Id.* The Court noted that it might have a different view if Schoenauer had been convicted of maintaining a continuing criminal enterprise, which did require proof that the defendant gained substantial income. *Id.*

In making its determination the Court cited to *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Pursuant to that case,

**2.** In addition, the new claim is tied to Schoenauer's separate claim that trial counsel failed to adequately investigate the accounting methods and conclusions made by the government's expert. As discussed later in this order, had such investigation been done, it would have raised serious questions about the reliability of the testimony and bolstered a claim under *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

expert testimony is only admissible if it is both relevant and reliable. Determining whether an expert's opinion is reliable enough to be admissible is not determined by a set formula; reliability is dependent upon the circumstances of a particular case. See *Kumho Tire,* 526 U.S. at 150, 119 S.Ct. 1167. In this case, for example, the Eighth Circuit Court of Appeals indicated it might have found Richards' testimony unreliable as to the continuing criminal enterprise charge because that charge required proof that the defendant gained substantial income as the result of the scheme. On direct appeal, however, the issue was not raised as a claim that counsel was ineffective in failing to make a motion under *Kumho* or *Daubert,* nor was it raised in conjunction with the claim that counsel failed to present evidence to support a *Kumho* claim.

Trial counsel conceded he did not even attempt to have the evidence excluded at trial. He stated that he believed the whole issue of "unexplained income" was a "side show" and that this was a drug case, not a tax case. He did not attempt to have the evidence excluded under *Kumho* or *Daubert,* because he believed he would lose on the issue. Counsel made that determination, however, without investigating the reliability of the proposed testimony. Schoenauer had told Davis that he had been investigated by the IRS and that the IRS participated in the search of his home. At that time, they seized all his financial records. Schoenauer told counsel that the IRS audit had revealed no unexplained income and that the records seized from his home would show he had none. Schoenauer was an accountant and he was confident on this issue. Despite this information from his client, counsel did not request discovery on the issue, requesting

only documents that the IRS intended to use at trial.[3]

As the Eighth Circuit Court of Appeals found, there was no direct evidence of Schoenauer's participation in the conspiracy. *Cuervo,* 354 F.3d at 986. It found that the evidence with respect to Schoenauer's drug use and sales did not support conviction of conspiracy. The Court noted that despite many transactions, Schoenauer typically did not accept money for drugs. It rejected the government's claim that his role as an accountant and financial officer for Norman and Ballistic Auto established his role in the conspiracy. It emphasized that the evidence against Schoenauer was weak, but that the shaky evidence outlined above, together with the government witness' testimony that Schoenauer had $2.6 million in unexplained income during the period of the conspiracy was sufficient to support the conviction. "[T]he government presented testimony that Schoenauer's wealth did not match his stated income it was reasonable to infer that the money was connected to the drug conspiracy." *Cuervo,* 354 F.3d at 987. For that reason, although finding that the evidence of Schoenauer's membership in the conspiracy was "weak," it could not find the conviction was unreasonable. *Id.* The Court agrees with this summation of the evidence against Schoenauer.

Testimony concerning Schoenauer's unexplained wealth was not a "side show." It was integral to the government's attempt to prove Schoenauer was a member of the conspiracy by showing he had unexplained wealth. Had Davis conducted the investigation requested by Schoenauer, he could have discovered and used evidence demonstrating that the government had investigated Schoenauer for 20 months and failed to find any evidence of unexplained

---

**3.** Of course the documents most likely to support Schoenauer's contentions were the documents the government did not intend to use at trial.

income. Demonstrating to the jury that the government presented testimony at trial that Schoenauer had $2.6 million dollars of unexplained income despite its own evidence to the contrary would have cast huge doubts on any other evidence the government had presented against Schoenauer.

As discussed in section (f) below, evidence counsel could have obtained would have cast substantial doubt on the credibility and reliability of the government's witness and would have bolstered any potential claim under *Daubert* or *Kumho*. Because of its determination of other issues in this case, this Court does not reach the ultimate issue of whether additional evidence could have made the testimony so unreliable it would have been excluded from use at trial had an appropriate objection been made.

 *b.* **Failure to investigate and present evidence to support Schoenauer's claim that he possessed firearms in reliance on advice stemming from contacts with governmental agencies.**

■ Schoenauer was convicted of three counts of unlawful possession of a firearm in violation of 18 U.S.C. § 922. Schoenauer was convicted based on his possession of the firearms despite a prior misdemeanor for domestic assault. Schoenauer claims counsel was ineffective for failing to investigate and raise a claim of entrapment by estoppel. Prior to trial, Schoenauer told counsel that in 1998 he had consulted attorney Jason P. Happel to determine whether he could legally possess a firearm. Schoenauer told trial counsel Happel advised him that he could legally possess a firearm. Happel had told Schoenauer he based his determination on research of federal and state law, discussions with members of the Ames Police Department and the Federal Bureau of Investigation, and that he had consulted with an Assistant United States Attorney named Steve O'Meara. Based on that legal advice, Schoenauer believed he was authorized to possess firearms.

Schoenauer contends counsel was ineffective for failing to present evidence supporting his claim that he acted in reasonable reliance on advice given to him; advice that was based on information given to him by government agents. Trial counsel did not present Happel as a witness at trial. Davis testified that either he or an investigator contacted Happel prior to trial, but believed that the opinion given by Happel to Schoenauer, because it was not in writing, was just a "horse back opinion." He stated that if Schoenauer had some documentation in writing from law enforcement or government officials it might be a defense, but that because he did not "entrapment by estoppel has no relevance to this case at all." He stated that his opinion was based on the fact that Schoenauer never directly contacted a government official, he only consulted his attorney.

Happel testified at the hearing that he had never been contacted by Davis. He testified that in determining whether Schoenauer was authorized to possess a firearm he researched federal and state law and contacted officials with the Ames Police Department, Federal Bureau of Investigation, and United States Attorney's office. He states that none of the representatives gave him cause to question his advice to Schoenauer. Based on his discussions with those offices and legal research, he advised Schoenauer he could possess a firearm. He testified if the government officials had given him any reason to suspect there was a question about the legality of Schoenauer possessing a firearm, he would have advised Schoenauer not to possess one.

Happel testified that although he knows he spoke to someone at the Ames Police Department and the FBI, he was unable to remember any specifics of the conversations, nor did he remember the names of the people he spoke with. He testified that he knows he spoke to Steve O'Meara, but does not remember the content of the conversation. O'Meara testified that he had no specific recollection of a conversation with Happel. He testified that the policy of his office was that assistant United States Attorneys do not offer legal opinions to members of the public, including attorneys. He stated that the office is there to serve the public, to a certain extent, so they would have a conversation about an issue, but not render an opinion.

■ The defense of entrapment by estoppel is applicable when a government official tells the defendant that certain conduct is legal and the defendant believes the official. *United States v. Bazargan,* 992 F.2d 844, 849 (8th Cir.1993). To successfully present a defense of entrapment by estoppel, Schoenauer "bears the burden of proof to demonstrate that: (1) his reliance on the government's statement was reasonable, and (2) the statement misled him into believing his conduct was legal." *United States v. Benning,* 248 F.3d 772 (8th Cir.2001).

Schoenauer gave Davis sufficient reason to believe he might be entitled to raise the defense of entrapment by estoppel. Upon being alerted by Schoenauer to the fact that he possessed guns in reliance on advice of an attorney, he should have contacted the attorney in order to discover the basis for that advice. But in order to obtain relief on this claim, Schoenauer must show he was prejudiced by Davis' failure to investigate this issue.

Happel testified that he had no specific recollection of his conversations with any of the government representatives. He fails to give any specifics about any representations made by any government official. Happel did not testify that he in fact identified Schoenauer as his client when speaking with O'Meara, or whether he gave all the facts of the situation to the government agencies so that they could render a fully informed opinion.

Although Davis and the government argue that representations by the government must be in writing and/or relayed directly to Schoenauer, they have not cited any cases holding that representations to an attorney would not be sufficient, nor have they cited any cases requiring that the representations be in writing. The Court does not believe those are requirements for the defense of entrapment by estoppel. There must be, however, some evidence that a specific representation was made by a government representative such that it was reasonable for Schoenauer to rely on that advice. *See, e.g., United States v. Alba,* 38 Fed.Appx. 707, 709 (3rd Cir.2002) citing *United States v. Stewart,* 185 F.3d 112, 124 (3rd Cir.), *cert. denied,* 528 U.S. 1063, 120 S.Ct. 618, 145 L.Ed.2d 512 (1999).

Schoenauer relied on advice of counsel. That advice was based on a combination of legal research and discussions with various agencies. Schoenauer fails to present specific evidence of any representation by a specific government representative that, based on all the relevant circumstances, Schoenauer could legally possess firearms. In order to establish the defense of entrapment by estoppel, Schoenauer must show that his reliance on the government official's statement was reasonable in light of the identity of the government official, the point of law represented, and the substance of the official's statement. *United States v. Alba,* 38 Fed.Appx. 707, 709 (3rd Cir.2002) citing *United States v. Stewart,* 185 F.3d 112, 124 (3rd Cir.), *cert. denied,*

528 U.S. 1063, 120 S.Ct. 618, 145 L.Ed.2d 512 (1999).

Schoenauer has failed to present evidence establishing the substance of any representation made by a government official. For that reason, the Court finds that Schoenauer has failed to present evidence sufficient to show that had his attorney investigated the information on which he relied, there was sufficient evidence justifying submission of the issue to a jury. See *United States v. Meads*, 479 F.3d 598 (8th Cir.2007) (Defendant is entitled to a theory of defense instruction that is timely requested if it is "supported by the evidence, and correctly states the law.").

Relief on this claim therefore is **denied**.

c. **Failure to object to evidence relating to his alleged affiliation with the Sons of Silence motorcycle club.**

 Schoenauer claims counsel was ineffective in failing to object to evidence concerning the relationship between the various defendants and the Sons of Silence Motorcycle Club. The government contends the evidence was relevant to show how the defendants were associated and was relevant to the criminal nature of the association and counsel therefore was not ineffective in failing to object. Evidence of gang membership is admissible if relevant to a disputed issue such as membership in a conspiracy. *United States v. Street*, 548 F.3d 618, 632–633 (8th Cir.2008); *United States v. Lemon*, 239 F.3d 968, 971 (8th Cir.2001). In this case, the evidence was relevant for the reasons stated by the government, and counsel was not ineffective in failing to object.

d. **Failure to move to sever Schoenauer's trial, so that Norman could testify on his behalf.**

 Schoenauer claims counsel was ineffective for failing to ask that his trial be severed from that of his co-defendants. He claims that had his trial been severed from that of co-defendant Norman, Norman could have offered exculpatory testimony on his behalf. Norman testified at the 2255 hearing that had his trial been severed from Schoenauer's, he would have been available to testify that Schoenauer only acted as his "money man" for business transactions, not drug transactions.

Defendants part of the same conspiracy are generally tried together. "It will be the rare case, if ever, where a district court should sever the trial of alleged co-conspirators." *United States v. Kehoe*, 310 F.3d 579, 590 (8th Cir.2002) (quoting *United States v. Frazier*, 280 F.3d 835, 844 (8th Cir.2002)). Defendant must show "'real prejudice,' which is more than a showing a separate trial would have improved the likelihood of acquittal." *See United States v. Gravatt*, 280 F.3d 1189, 1191 (8th Cir. 2002). Merely because there was more evidence against one does not justify severing the trial. *See United States v. Frazier*, 280 F.3d 835, 844 (8th Cir.2002) (severance not required merely "because the evidence may have been more damaging against one appellant than the others") (quoting *United States v. Pou*, 953 F.2d 363, 369 (8th Cir.) (internal quotations omitted), cert. denied, 504 U.S. 926, 112 S.Ct. 1982, 1983, 118 L.Ed.2d 580, 581 (1992)).

Norman gives no clear explanation why he did not testify at trial. He states that he thought his testimony was "unnecessary" because he thought the case was won without his testimony. He also stated that if he testified there was a chance he would "make mistakes." On cross examination, he denied saying he chose not to testify in part because of the risk of "making mistakes." The Court is not convinced from the testimony given by Mr. Norman that he in fact would have testified at Schoe-

nauer's trial, especially if Schoenauer had been tried before Norman.

Norman would have faced the same risks in that situation as he did in the joint trial. A defendant seeking a severance so he can call a co-defendant as a defense witness must show that the co-defendant "would have testified and his testimony would have been exculpatory." *United States v. Blaylock,* 421 F.3d 758, 766 (8th Cir.2005). A defendant seeking severance must show "real prejudice," that is, "something more than the mere fact that he would have had a better chance for acquittal had he been tried separately." *United States v. Oakie,* 12 F.3d 1436, 1441 (8th Cir.1993) (citing *United States v. Adkins,* 842 F.2d 210, 211–212 (8th Cir.1988)).

Schoenauer has failed to show a reasonable likelihood that Norman would have testified on his behalf, given that Norman chose not to testify at his own trial, and that he would have faced similar risks in testifying for Schoenauer at a separate trial. In addition, the proposed testimony by Norman was not sufficiently strong to warrant a severance. See *Oakie,* 12 F.3d at 1441. Relief on this claim therefore is denied.

### e. Failure to argue, on remand, that Booker error had been adequately preserved.

Schoenauer's case was remanded from the Supreme Court for reconsideration under *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Schoenauer contends appellate counsel was ineffective in failing to establish that *Booker* error had been raised in the trial court, thereby requiring a less exacting standard for obtaining relief. On remand, the Eighth Circuit Court of Appeals found that although Schoenauer was subject to a number of required sentence enhancements under the guidelines regime, he did not challenge "the enhancements or the

guidelines system in a manner which would preserve the Booker issue for our review." *United States v. Norman,* 427 F.3d 537, 539 (8th Cir.2005) (rehearing and rehearing en banc denied).

In denying relief, the Court stated:

Having carefully reviewed the entire record in Schoenauer's case, we conclude he cannot establish a reasonable probability that he would have received a more favorable sentence absent the Booker error.

*Id.*

Schoenauer claims that had counsel argued his case more effectively, the Eighth Circuit Court of Appeals would have found that *Booker* error had been preserved and that he was entitled to relief. The Court of Appeals, found, however, that Schoenauer satisfied the plain error standard of review because he had shown he was sentenced under the mandatory guidelines regime and "we have previously determined that error to be plain." The Court stated that the next task was to determine whether there was a reasonable probability that the defendants would have received a more favorable sentence absent the *Booker* error. It then stated that it had carefully reviewed the entire record and that Schoenauer was not entitled to relief, finding it significant that this Court sentenced Schoenauer in the middle of the guideline range. It found no reasonable probability that Schoenauer would have received a more favorable sentence under advisory guidelines.

The Court finds appellate counsel was not ineffective in arguing this issue. There is no reasonable probability that had counsel argued the case differently the result would have been different. The Eighth Circuit reviewed the entire record in making its determination. In addition, although this Court sentenced Schoenauer at the bottom of the sentencing range on

the firearms conviction, on the drug charge convictions that were remanded for reconsideration in light of *Booker*, this Court sentenced Schoenauer in the middle of the guideline range. This Court would not have imposed a different sentence even had the sentencing guidelines been advisory. Relief on this claim therefore is denied.

### f. Failure to investigate and seek discovery regarding the Internal Revenue Service's participation in the investigation of Schoenauer's allegedly "unexplained income," and the IRS's conclusions regarding such investigation.

 As stated above, Brad Richards, an auditor with the ATF, gave expert testimony at trial that for the time period 1992–1998 Schoenauer had $2.6 million unexplained income. The government presented this evidence in an attempt to show that Schoenauer's wealth did not match his stated income and create an inference the money was connected to the drug conspiracy. Schoenauer testified that when he learned in December 2001 that the government planned to have Brad Richards testify as to unexplained income during 1992 through 1998, he reviewed the proposed testimony and exhibits. He told trial counsel that he needed to investigate and seek discovery regarding (1) documents seized from his home and office by Internal Revenue Service Criminal Investigation Division ("IRS CID") Agent David Peterson who was involved with the investigation of his case; (2) records relating to

the 1992 IRS audit of his 1992 personal tax return, which resulted in a finding of no unreported income; and (3) any law-enforcement reports or records of the IRS CID relating to any conclusions derived as a result of their 20–month investigation. Despite his request, trial counsel did not request the records.

Counsel testified he did not investigate these records because he had insufficient time and the issue was peripheral. He conceded, however, that the results of an IRS audit finding no "unreported income" in 1992 would have been useful in impeaching Richards. He also conceded that if he had a report from Agent Peterson indicating that he found no evidence of money laundering or criminal tax violations prior to trial, that could have been used to devastating effect in the impeachment of Richards' opinions.

Both those reports existed and could have been obtained by counsel. Davis testified, however, that Richards was so effectively cross examined at trial that the jury, even without the evidence outlined above, disbelieved him.[4] For that reason, they convicted Schoenauer of conspiracy to distribute fifty to five hundred grams of methamphetamine, rather than conspiracy to distribute a larger amount. He testified that 500 grams of methamphetamine has a rough value of $ 50,000, so the jury must necessarily have disbelieved Richards' testimony that there was $2.6 million unexplained income, even without further impeachment evidence.

---

4. Davis did not orchestrate the cross examination. Attorney William Smith, who conducted the cross examination, had no involvement in trial preparation for the six weeks preceding trial. Smith testified that Davis told him several weeks prior to trial that his participation in the trial was not needed, despite earlier discussions that he might be involved in addressing financial testimony.

Smith became involved when Schoenauer contacted him three days before Richards testified. Schoenauer asked Smith to conduct the cross examination of Richards as he had become increasingly worried that Davis did not understand the significance of Richards' testimony or the flaws in the testimony. Smith testified that Davis did not want him involved in the trial.

David Peterson, a special agent with the IRS CID, testified at the 2255 hearing that his duties as a special agent were to conduct investigations of possible criminal violations of the Internal Revenue laws, including tax evasion, fraud, and money laundering. He testified that in November 1999, his office received a letter from Stephen O'Meara, Assistant United States Attorney, stating that the United States Attorney's office had been investigating Schoenauer regarding possible narcotics violations, money laundering, and income tax fraud. The letter directed Peterson's office to investigate Schoenauer's personal and business returns for the years 1994–1999 for evidence of any criminal violations. Peterson's office subpoenaed Schoenauer's business and bank records. They interviewed Schoenauer's business associates, obtained gambling receipts, executed a warrant for financial records at Schoenauer's home, and seized several computers. All these records were reviewed in an attempt to derive evidence of criminal tax violations or money laundering violations.

Evidence was presented at the 2255 hearing showing that in August 2000 Peterson received an e-mail from his boss Jay Van Kirk. The e-mail emphasized that he needed Peterson to get as much possible evidence on Schoenauer in the next 30 days to use to support either a tax or money laundering charge. The e-mail explained that any evidence obtained would go directly to the United States Attorney's office for use in the prosecution of Schoenauer. On September 12, 2001,

Peterson prepared a form indicating he was discontinuing investigation of Schoenauer having found no criminal violations.

Peterson's report indicated that Schoenauer's net worth had increased on his financial statements due in part to increases in the fair market value of his real estate holdings, and that the real estate and business holdings had been acquired because banks had been liberal in allowing him credit. He found no property acquired with currency, and no substantial cash deposits in Schoenauer's accounts. Peterson testified that had he been called to the stand by the government at Schoenauer's trial and asked whether he found any evidence that Schoenauer acquired any property with any unreported or unexplainable funds, he would have testified that he had found no such evidence.[5]

The government did not call Peterson as a witness. Instead they called Brad Richards, who testified that for the time period 1992–1998 Schoenauer's investments totaled $2.9 million while his available income was only $262,200. He testified that his conclusion was, therefore, that Schoenauer had $2.6 million unexplained income for the same time period the IRS CIS' 20 month investigation was unable to find any evidence of unexplained income.

This is not a case where a defendant, inexperienced in accounting, suggests that there might be some helpful information in his tax records. Schoenauer was an experienced accountant. He knew he had been cleared in the 1992 audit, he knew his records had been subpoenaed by the IRS

---

5. It is unclear why this evidence was not turned over to defense counsel as exculpatory material pursuant to *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) ("When the 'reliability of a given witness may well be determinative of guilt or innocence', nondisclosure of evidence affecting credibility falls within this general rule.") The issue is raised, however, only as a claim of ineffective assistance of counsel, not as a claim pursuant to *Giglio*. The Court is, however, troubled by the government's use of a witness testifying in direct conflict to the results of a joint governmental investigation seeking evidence for use in this prosecution without revealing the contradictory information to defense counsel.

and investigated, and he knew there was documentation in his files which would discredit Richards. Instead of conducting any investigation into those records, Davis relied on cross examination by an attorney alerted by Schoenauer to his need to participate in the trial on the Friday before Edwards testified.

"[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith,* 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052). Here, Davis' client was facing testimony attributing him with $2.6 million in unexplained income, and Davis had been alerted to the fact that documents directly contradicting that testimony existed. His failure to seek those records was not based on any reasonable investigation into their content or significance. Additionally, given that his client, a sophisticated accountant, alerted Davis to the significance of these tax records, Davis' decision to forgo any further investigation was not a strategic choice based on reasonable professional judgment. Accordingly, the Court finds that Davis' failure to seek those records fell below an objective standard of reasonableness.

 The fact that Schoenauer was "only" convicted of conspiracy to distribute fifty to five hundred grams of methamphetamine does not mean that Schoenauer was not prejudiced by Davis' failure to investigate this issue. As noted by the Eighth Circuit Court of Appeals, the evidence tieing Schoenauer to the conspiracy was weak, but the limited evidence there was *together with the government witness' testimony that Schoenauer had $2.6 mil-*

*lion in unexplained income during the period of the conspiracy* was sufficient to support the conviction. *Cuervo,* 354 F.3d at 987 (Emphasis added).

Cross-examination may have limited the effect of Richards' testimony as to the amount of unaccounted income the jury was convinced beyond a reasonable doubt should be attributed to Schoenauer. Introduction of evidence that the government conducted two extensive investigations of Schoenauer's finances and found no unaccounted income and no evidence of money laundering or criminal tax violations would have devastated the testimony of Richards and would have cast significant doubt on any other evidence the government had presented against Schoenauer. Given the weak nature of the evidence that Schoenauer was an active participant in the conspiracy, destruction of another piece of evidence calls the result of the trial into doubt. The Court therefore finds that there is a reasonable probability that had Davis conducted the investigation into Schoenauer's records as requested by Schoenauer there is a reasonable probability the result in this case would have been different. Relief on this claim therefore is granted.

### III. Conclusion

The Court finds that Russell Schoenauer is entitled to relief. The Court **grants** Russell J. Schoenauer's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The judgment in *United States v. Russell Schoenauer,* No. 4:01–cr–00065 (S.D.Iowa), filed on August 26, 2002, is **vacated as to the sentences entered on Counts 2, 8, and 46 (the drug charges). The firearms convictions remain in place.** The Clerk of Court shall enter of copy of this order in the criminal case. The Court will set a date for further

proceedings in the criminal case by separate order.

IT IS SO ORDERED.

## ORDER ON MOTION TO ALTER OR AMEND JUDGMENT

Before the Court is Respondent's Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e), filed after the Court granted Schoenauer's request for relief pursuant to 28 U.S.C. § 2255.

Petitioner filed a Response to the Motion on October 5, 2010. On October 21, 2010, the Court held a hearing on the Motion. On October 26, 2010, counsel for Petitioner sent the Court a letter making additional arguments, which was responded to by the government on October 26, 2010. Also before the Court is the issue of the appropriate remedy in this case; retrial of Schoenauer on the affected counts or dismissal of those charges.

### I. Motion to Alter or Amend

The Government argues that the Court's order vacating Schoenauer's convictions on all three drug convictions was affected by a manifest error of fact and law because the substantive drug counts (Counts 8 and 46) were not affected by ineffective assistance of counsel and/or because the government was never placed on notice that a finding of ineffective assistance of counsel would affect the distribution counts. The government argues that had it been apprised of the possibility that the distribution counts could have been affected by the Court's ruling, it would have argued against such a finding.

Respondent fails to provide a basis for granting the Motion to Alter or Amend. As noted by Petitioner, Respondent has been on notice since the filing of the 28 U.S.C. § 2255 Motion itself that Schoenauer was seeking vacation of all the drug convictions. See 28 U.S.C. § 2255 Motion,

30–31; Petitioner's Br. in Support of 28 U.S.C. § 2255 Petition, 27. At no point in the lengthy time this case was pending did the government argue that the distribution counts were unaffected by any of the claimed errors.

Respondent further fails to explain why the Courts finding of ineffective assistance of counsel does not affect the substantive drug counts (Counts 8 and 46). The evidence presented at the § 2255 hearing was directly related to the counts alleging illegal drug distributions, because it dealt with a direct consequence of these alleged distributions, unexplained income. Furthermore, this evidence may have raised doubts with the jury as to the reliability of the witnesses the government was willing to present in order to obtain convictions against Schoenauer. In light of the government's use of the testimony of Brad Richards despite extensive contradictory evidence produced in an investigation also initiated by the government, the jury may have questioned the testimony of other witnesses presented by the government. Finally, evidence that the Internal Revenue Service had conducted an extensive investigation of Schoenauer and "cleared" him of any wrongdoing may have bolstered his credibility with the jury. For these reasons, the reliability of Schoenauer's convictions on all three drug charges was called into doubt.

The Motion to Alter or Amend (Clerk's No. 43) is therefore **denied.**

### II. Appropriate Remedy

On August 26, 2002, this Court sentenced Schoenauer to 210 months imprisonment on Counts 2, 8 and 46, and 120 months on Counts 31, 32, and 38, all to be served concurrently with the term of imprisonment on Count 2. On September 27, 2010, the Court granted Schoenauer's 2255 petition and vacated the judgment in his

criminal case as to the convictions on Counts 2, 8, and 46. The Court denied Schoenauer's 2255 petition as to the firearms charges (Counts 31, 32, and 38).

Schoenauer has completed the 120 month sentence on the firearms convictions. The issue facing the Court is whether he should be re-tried on Counts 2, 8, and 46, or whether the charges should be dismissed and Schoenauer released from prison without further proceedings. Schoenauer argues that the charges should be dismissed and he should not face re-trial, given the actions of trial counsel and the government and because substantial prejudice to Schoenauer would result if a re-trial was granted. The government argues that re-trial is the appropriate remedy, as no *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (*"Brady* claim") violations have been pled or proven.

## A. Factual and Procedural Background

Schoenauer was granted relief in this case based on the Court's determination that trial counsel was ineffective in failing to investigate and provide proof at trial that the government had investigated Schoenauer for 20 months and been unable to discover any evidence that he had any unexplained income or any other evidence to support money laundering charges against Schoenauer. The 2255 petition was not filed as a claim for relief pursuant to *Brady*[1], and relief was granted based on ineffective assistance of counsel not *Brady* violations, although the Court noted in a footnote that the material not discovered by counsel appeared to be evidence that the government would have been required to produce pursuant to *Giglio v.*

*United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

As the 2255 proceedings progressed, however, Johnston stated that he obtained evidence that seemed to support a *Brady* violation. The government now claims they were not on notice of a *Brady* claim, that they had not seen a closing document summarizing the findings of the IRS investigation, and/or that the document summarizing the results of the IRS investigation may have been in the boxes of materials trial counsel was allowed to examine. The government claims that "the Petitioner would have the burden of proving that the closing sheet was withheld from, as opposed to overlooked by, defense counsel had petitioner pled such a claim in proceedings under 28 U.S.C. 2255."

Cliff Wendell, one of the Assistant United States Attorneys responsible for prosecuting this case, advised the Court during the hearing on the Motion to Alter or Amend that he had not seen the closing sheet. The government argues that the Court should not assume willful misconduct based on the limited record before it, and that the passage of time makes it impossible to recreate the discovery materials and determine whether the closing sheet was made available to defense counsel.

The contested closing sheet is dated September 12, 2001, and is addressed to Inga Bumbary–Langston, United States Attorney for the Southern District of Iowa and has a notation "Attn: AUSA Cliff Wendell." The document was drafted two days after Magistrate Judge Ross Walters entered an order in the criminal case. The Order stated that the Court would not

---

**1.** 2255 counsel (hereinafter "Johnston") stated he was reluctant to raise a *Brady* claim without conclusive proof of government misconduct. Only after he was able to obtain

discovery as the case progressed did he find "fire" rather than "smoke" supportive of a *Brady* claim.

require the government to "sort through all the extensive documents and information in this case to identify those items which tend to disprove the allegations against Schoenauer." *United States v. Schoenauer*, 4:01–cr–00065–RP, Docket No. 252. The Court noted, however, that the government had a continuing and affirmative duty to disclose exculpatory material under *Brady* and noted that the government needed to provide "reasonable pretrial notice of common types of impeachment evidence" regarding government witnesses. Although Judge Walters' order was particularly referring to cooperating witnesses, it also served as a reminder of the government's duty to turn over impeachment evidence.

The Court agrees with the government that the lapse of time makes it difficult to recreate a complete and entirely accurate picture of what occurred at the time of trial. The Court disagrees, however, with the government's contention that this precludes Schoenauer from obtaining relief. It is clear from the evidence before the Court that the government conducted an extensive investigation of Schoenauer and failed to find evidence that he had unexplained income. The investigation was conducted by IRS agents, but the agency was conducting the investigation to obtain evidence to use against Schoenauer in this criminal case, and the United States Attorney's office was aware of the investigation from the start.[2]

AUSA Wendell advised the Court at the hearing on the Motion to Alter or Amend that at the time he and AUSA Lester Paff received the case from AUSA O'Meara, the Bureau of Alcohol, Tobacco and Fire-

arms was the lead investigative agency and the IRS was no longer involved. He stated that they had information from the IRS but were unaware of the ultimate determination made by the IRS.

Although it is unclear who within the United States Attorney's office actually received the results of the investigation, it appears that the results of the 20 month investigation were sent to the United States Attorney's office, and that office had an obligation to turn it over to defense counsel. Someone within that office knew that an investigation of Schoenauer had occurred and was under a duty to obtain the results of that investigation and apprise defense counsel of the results of that investigation.

It is not sufficient to claim Schoenauer knew he had been cleared in the IRS investigation. He knew no charges had been brought. He did not know the results of the investigation or that the government possessed a document that would have completely contradicted testimony the Government presented at trial. The document was valuable impeachment evidence that should have been produced.

That being said, this case was not plead as a *Brady* violation and relief was granted based on counsel's failure to investigate the issue. The information is relevant, however, to determining the appropriate remedy.

**B. Analysis**

The federal habeas corpus statute provides that when a federal court finds that a judgement was rendered without

---

2. David Peterson, a special agent with the Internal Revenue Service Criminal Investigation Division testified at the 2255 hearing that in November 1999, his office received a letter from Stephen O'Meara, Assistant United States Attorney, stating that the United States Attorney's office had been investigating

Schoenauer regarding possible narcotics violations, money laundering, and income tax fraud. The letter directed Peterson's office to investigate Schoenauer's personal and business returns for the years 1994–1999 for evidence of any criminal violations.

jurisdiction or is legally infirm, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial...." 28 U.S.C. § 2255. A district court may exercise its supervisory power "to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct." *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008) citing *United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir.1991).

 "*Brady* and *Giglio* impose active duties on prosecutors prior to trial." *United States v. Lyons*, 352 F.Supp.2d 1231, 1243 (M.D.Fla.2004). "A prosecutor is duty-bound to ascertain whether government agents and the police have evidence favorable to the defendant." *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Dismissal of an indictment can be granted when there is reckless disregard for the prosecution's constitutional obligations. See *Chapman*, 524 F.3d at 1086.

"The usual remedy for a *Brady* or *Giglio* violation is to set aside any affected convictions, and that generally contemplates a new trial. It is, however, within a district court's inherent power to dismiss an indictment on the grounds of prosecutorial misconduct." *Lyons*, 352 F.Supp.2d at 1251 (citations omitted). Not surprisingly, given the length of time since trial, the record is unclear as to whether the government deliberately withheld the final determinations made by the IRS. The Court finds, however, that failure to discover and disclose the results of the investigation was at least reckless.

The Court finds that dismissal of the indictment on Counts 2, 8, and 46 is the appropriate remedy. The government's actions were at least partially the cause of the need to invalidate the convictions and the passage of time makes re-trial impractical for many reasons. The memories of witnesses will be unreliable, and one prosecution witness has died since the trial. Re-trial at this point would be a hardship for Schoenauer, who incurred significant expense in defending himself in the lengthy first trial. For those reasons, and the reasons set forth in Petitioner's brief, the Court finds dismissal of the charges is the appropriate remedy.

The Motion to Alter or Amend is **denied.** Counts 2, 8, and 46 are **dismissed.**

IT IS SO ORDERED.